Steenholt will hear from you first. You may proceed when you're ready. May it please the Court. My name is Rachel Steenholt and I represent Mr. Lebeau. We are asking this Court to vacate Mr. Lebeau's conviction and remand for a new trial. Or in the alternative, we request remand for resentencing. Over defense objection, the District Court permitted two 9-1-1 calls. If the Court has not been able to listen to these calls, please do. The first call is four minutes and 55 seconds of a domestic violence assault occurring in Montgomery Lebeau. On the call, you hear physical assault occurring. You hear Candace screaming. She's crying. She's moaning in pain. She's pleading with Mr. Lebeau to stop hurting her. And you hear, while Mr. Lebeau is physically assaulting her, he berates her, he swears at her, he calls her derogatory names, he repeatedly calls her racial slurs, and he threatens her. With a gun. In his own words, he acknowledges the gun, right? Well, we submit that it's not enough to show that he actually had possession of the gun. He uses slang and he, but it's different than, put that firearm down. Stop pointing that gun at me. That's not sort of, it doesn't indicate he is physically actually possessing the gun. But what is very important here is that less than 15 seconds, less than 15 seconds of that four minute and 55 second call pertains to the possible presence of a firearm, not the definite presence of a firearm. It's just the possible presence. So, the remaining four minutes and 40 plus seconds are purely just that moaning, the screaming, the crying, the pleading, and the swearing. And this is exactly what Rule 403 is designed to protect against. Rule 403 tells us that if the probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, or misleading the jury, then the court must exclude the evidence. And evidence is unfairly prejudicial if it is so inflammatory on its face that it diverts the jury's attention from the materials issued in the trial. And that's exactly what happened here. The call does that. Now, how much was redacted? The redactions happen in the second call. Thank you. Yes. Was there any proposal to redact the first call? Any proposal from the defense? No, just to exclude. All or nothing? All or nothing? Yes, all or nothing. Does that mean it's a plein air question on redaction? It's not. When you look at the call again, only 15 seconds of the call has a minimally probative value to it of the entire four minutes and 55 seconds. I know, but what I meant is since the defense didn't ask for redaction, does that affect the analysis? It doesn't. The defense did ask for alternative compromises of the probative value. Why don't you have an agent testify to these statements? Just hearing what happens in that call was just going to be too inflammatory where it wasn't too prejudicial to play at all. The defense position was it couldn't be redacted, right? Exactly. Correct. Correct. You wanted an agent to testify that he listened to the tape and heard LeBeau say something? That was one suggestion that the attorney, the defense counsel at the pretrial conference, did suggest was that these statements, to the extent that they're probative and relevant, they could be submitted through alternative means. Maybe an agent could testify to them. That was just one suggestion thrown out. But really the overall point of defense counsel was this is extraordinarily prejudicial, which is exactly what the district court said. This is extraordinarily prejudicial. But if the defense position was therefore it should be excluded entirely, that affects the analysis because it certainly also has probative value. It does, but Rule 403 is exactly designed for this. So, yes, there's probative value, but 15 seconds, less than 15 seconds of a 4-minute and 55-second call. That's where Rule 403 comes in and says this should be excluded. Counsel, what's your closest case to this? There are a lot of 911 calls. Several states, you know, they're immediately available. They're the nightly news. So what's your closest case? I didn't see in either brief a close case. Yeah, it's challenging because the 403 analysis is very fact specific. We do cite Bowman, and to the extent that that's, you know, instructive here, in that case there's a domestic dispute that's being discussed in the context of a gun case. But 403, again, is this very fact-specific inquiry. And here the evidence is unfairly prejudicial. It is inflammatory on its face. It diverts the jury's attention from the material issues in this case, and it should have been excluded under Rule 403. There was a cautionary instruction. That does not, we submit that no cautionary instruction could have saved that call. And, again, if you haven't listened to the call, I urge you to listen to that first call. But here actually the cautionary instruction reinforces the error, and it does so by instructing the jury to use this call to determine guilt. So quoting part of the instruction from page 26, it says, quote, you may only consider the evidence from these recordings to determine whether or not he's guilty or not guilty of that offense and not for any other offense. So close quote. What it doesn't say is you just listened to a 4-minute and 55-second call, which less than 15 seconds of which discussed the presence of a potential firearm. Only consider those few statements. But defense didn't propose a different cautionary instruction, did they? It didn't. I've never seen that. Go ahead. Correct. Or almost never. Go ahead. So the limiting, the cautionary instruction doesn't say only consider those few statements, those less than 15 seconds worth of statements, only consider those few statements and disregard everything else. That would have been more limiting. But in the absence of something more limiting, the instruction as is tells the jury, you can use the name calling. You can use the physical assault. You can use the racial slurs. You can use the crying and you can use the moaning and pain to, quote, determine whether or not he is guilty or not of that offense, close quote. And so, again, our position is that no cautionary instruction would have saved the prejudicial impact that this call had, but even the one that was presented actually reinforces the error. We haven't discussed harmlessness yet, and I've got to bring that up. Yes. What would you say about harmlessness since there's overwhelming evidence of guilt? So we dispute that there is overwhelming evidence of guilt, and the reason being is that there's no DNA evidence in this case. The gun is not found on Mr. Lebeau. There's no definitive way to prove the magazine and the gun, which were found separate from one another. There's no definitive way to prove that they actually do go together. There's testimony that the gun is widely circulated, that there's been over 5 million made, and that the magazine is even more widely circulated, more of the magazines have been made, and nobody else places the gun in the hand of Mr. Lebeau but for Candice, and that's in the context of this domestic dispute that she surreptitiously is recording. So infusing the improper evidence tipped the scale here, and Mr. Lebeau had the right to a fair trial where the jury was only to convict him based on the charge presented. So the government cannot meet its burden, and it's the government's burden, harmless errors. The government cannot meet its burden to show the error was harmless. Now, was the context here that the woman testified, right? Correct. She said she saw him with a gun in his hand. Correct. So the recording was in a way, in a sense, designed to corroborate her because the defense was attacking her credibility, is that? Well, there's an important part of the timing of everything, which actually further reinforces why that first call was so impactful. So the jury hears that first call, and again, I would really urge you to, if you haven't listened to that call, to do so. The jury hears that first call right away, and so that is the first impression that they have of the case and of Mr. Lebeau. Now, Candace testifies towards the end of trial. Do you think there's some significance in the order in which the evidence was presented? I do, yeah. You mean you think it might have been okay if the tape were played after she testified? I don't think the tape should have been played at all. I don't think there's any circumstance where the tape should have been played. I didn't think you were going to go for that, but I wondered why you think the order is important. Because. . . I think it's relevant to the prejudice here, and it's just because that call was played right away. That is one of the first. . . That is the first impression that the jury really gets of what this case is about. But my question was, is it fair to say that the tape was designed to corroborate this witness? Sure. Wasn't that one of the purposes? Sure, yeah. And if you didn't have the tape, then the defense would have been saying, it's a he said, she said situation. She says he had a gun, and we say he didn't. Yeah. And which is in the province of the jury to assess credibility. Yeah, I know. But if there's corroborative evidence. . . Sure. But Rule 403 says. . . So. . . I'll turn briefly to the second issue, which is that in the alternative, we request that the court remand for resentencing. The district court plainly erred by failing to consider whether Mr. Lebeau's federal sentence should run concurrently with a state sentence under Section 5G1.3c of the guidelines. So to unpack that, prongs 1 and 2 of plain error are easily met. Section 5G1.3c applies to an anticipated state sentence that results from another offense that is relevant conduct to the instant offense. And that's clear here. We have paragraphs 4 and 47 of the PSR clearly lays out that there's an anticipated state sentence based on relevant conduct. Now, is it obvious what anticipated means? It is.  Yes. I know that. . . Now, there's only a state arraignment to your time, Sharon. There was only a state arraignment at this point, right, or a state charge. State charge. There have been no state proceedings at all, right? Well. . . So it's far from anticipated. Go ahead. No, it's anticipated. It's stated as anticipated, you know, in the PSR. So he's arrested October 31st, and then he's written out of state custody at the end of January. I'm trying to cut it short for you. Oh. At the time of the sentencing. . . The federal sentencing. The federal sentencing. Yes. Thank you. There had been nothing going on in state court, right, is the short answer? Just a charge. Which is enough. Boy, if it were anticipated in state courts with automatic diversion, prosecutor diversion, court diversion, felony diversion. . . Yeah. In this day and time, that's enough? That's enough. Yep. Oh, boy. Pending state charges, and it was pending. That's not. . . It says a state term of imprisonment is anticipated result. Prison results. Which is anticipated. It doesn't have to be conclusively. It will for sure happen. But anticipated at this proceeding of the case, there were charges pending. And there's no definition of the guidelines of anticipated, right, or the case law? There isn't. There isn't. But I think the plain reading of anticipated spells this out pretty clearly that a state sentence was. . . The cases at the government site, charges weren't even brought at all yet. So it's distinguishable. Here we have charges that are present, and relevant conduct is also undisputed. How much time are we talking about? It was one month that after. . . Approximately one month after Mr. Lebeau was federally sentenced that he then is sentenced on the state side. And, again, that's important because 5G 1.3c instructs the court to run these concurrently. And. . . Well. . . Yeah, okay. Go ahead. So. . . It's not mandatory. It's not mandatory. But here there's an error because there's no indication in the record that the court even considered this at all. That it was even a glint in the district court's eye. And so. . . And the Supreme Court tells us. . . The Supreme Court precedent tells us that even one extra day in custody meets prongs three and four of plain error review. So we ask the court to remand for resentencing. And I'm going to ask to reserve the remainder of my time for rebuttal. Very well. You may do so. Thank you for your argument. Mr. Kelderman, we'll hear from you. Thank you. May it please the Court. Ms. Steinholtz, I'm Eric Kelderman, an assistant United States attorney on behalf of the United States in this matter. The evidence that the appellant that the defense sought to exclude here was a recording of the defendant committing his crime. I'm not so sure that I agree with the terminology calling it a surreptitious recording. Mr. Lebeau here was trying very hard to get the phone out of Candace Arthur's hands and to get the passcode, the password, to get into that phone. I think there's strong indications that he knew exactly what she had done. She had called 911, and he was trying to get basically the phone call to 911 to stop. But regardless, guns are often associated with violent crimes. The district court even looked at this recording and found it to be extremely prejudicial. But the question is whether it was unfairly prejudicial. And it was a recording of the defendant, like I said, committing his crime. He just wants to whitewash the circumstances under which he committed that crime. I believe also that there is quite a bit more than 15 seconds of the recording that indicates, that connects what he was talking about with the crime. He says at the 1 minute 53 second mark, I'll shoot you in your effing face. At the 2.16 mark, he said that she should give him the code before he shoots her in the face. He was going to dust her ass, and he says he's going to bust her ass up and shoot you in the face, dog. And that is at the 3.52 mark. He wasn't threatening to stab her. He wasn't threatening to beat her, although he did. The gun also was used to hit her in the head, and she had a two-inch gash to her head. All of these things corroborated the fact that he possessed a gun. It wasn't the only evidence, but her testimony about what happened was not cumulative to this. They weren't necessarily about the same exact thing. She actually, because he doesn't say in the recording, I have this gun, and I'm going to shoot you. I have a black gun. I have a black gun with a magazine in it, or anything like that. He just said he was going to shoot her. Okay, so now we have an indication of him committing the crime and him having a conversation about it. Then she takes the stand, and she testifies. He had a gun. It was black. He hit me with it. I think she called it a small gun. She said at one point that the cut to her head was from that. She testified about the location in his home where he had done these things. Officers later went in there. It's a chaotic situation when they first get there because LeBeau is running down the street or down the alley. She is over making a phone call from a couple of buildings away, and she's on the phone with dispatch. Officers are looking to try to find out what's going on because basically they've been told about a whole lot of threats that have been made during a five-minute, less than five-minute phone call that they received and were listening in on. The officer goes in to check for the safety of those inside the place, and he sees a bloody towel corroborating her head injury. He finds a magazine that fits right into the well of this gun. Yes, of course, it's a magazine, and a magazine for a high-point firearm, it could fit into any firearm. But the firearm that is found in the alley not far from him, and I believe Officer O'Brien saw him throw the gun down. I'm not positive about that. I thought the evidence was that the officer didn't see him throw it, but found it, quote, found it on the route, chasing him. Right. Is that what I'm saying? Tell me what the record is. I cannot remember for certain, Your Honor. I believe it is in my brief, but on the top of my head, I can't remember for sure. I do think that's what you said in your brief. Okay. I may be wrong. It was found in the vicinity. It was found along the route. But that gun didn't have a magazine in it. None of these things were, like I said, the definitive evidence of guilt, the definitive evidence that showed he committed the crime. But circumstantially put together, she's talking about where it occurred. There's a magazine there. He's out in an alley running from police. There's a firearm found there without a magazine. So all of these things were the pieces that put this crime together. Yes, this was a prejudicial recording, and it was something that made him look bad. But he chose the circumstances when he wanted to commit his crime. He chose to do it in a place where he was being recorded. It was unfortunate for him, and it sounded bad, but the district court did everything that it could. The district court gave the cautionary instruction. It told the jury what they could use that evidence for. It cautioned them that he wasn't on trial for another crime, but just for the felon in possession charge that he was there for. It also limited the testimony from Ms. Arthur. She could have corroborated a whole lot more of the circumstances of that call, but the court prohibited it. I think her testimony covers approximately four pages of transcript or less. It's not very long. Because the district court said, okay, because the defense said in their opening that the government was not going to be able to put in or wasn't going to put on evidence that put the gun in his hand, her testimony was appropriate. But it said she's not going to go into this domestic violence. She's not going to go into the details of what happened at that point. So there wasn't a cumulative effect. It wasn't a circumstance where this was inappropriate or wrongfully allowed to be put in. The district court did not err in doing that. It rightfully admitted this evidence. Judge Benton, you asked a question about the most apposite case. I believe Robertson is on point quite a bit. That was a case of my own, actually, and there were a number of recordings in that case. It's cited in both parties' briefs, I believe. There were a number of recordings that were in the heat of the moment, and they were identifying the shooter right after a fight, and they were excited. It wasn't a circumstance where the actual shooting, the actual crime was recorded, but there were a lot of excited people talking about the person who had done it and the circumstances surrounding it. So in the sense that those recordings in some ways made that defendant look bad, it is somewhat applicable in this circumstance. The other argument is that as far as this guidelines issue under 5G1.3 and the consecutive versus concurrent sentence issue, the United States believes the error is not so plain and it's not so obvious here. And I don't mean to be glib, but if it were that plain and obvious, there would be a case cited in the appellant's opening brief that's directly on point. There is not one. There's a citation to a case called Setzer. Setzer is a Supreme Court case from 2012. It's also cited in the United States brief. Setzer was the precursor to 5G1.3c. 5G1.3c, of course, says that when a State sentence is anticipated, then the Court shall run the sentences for the Federal case and the State case concurrently. That shall language, of course, is now. Again, the name of that case? Setzer was a Supreme Court case. Okay. Sure. Setzer was the, like I said, the precursor to 5G1.3c. Setzer did not in any way define what anticipated means. When I started writing this brief, when I started going through the case here, I was surprised when I came to, I guess, reading the appellant's brief, I was surprised when I got to the point where it discussed that he did have a State sentence. I say that largely anecdotally because in my experience and having done this, it was very rare where the Federal Government, where the U.S. Attorney's Office took a State firearms case and the case ended up being sentenced or the defendant ended up being sentenced in State court later. It was a rare occasion. I suppose perhaps here the circumstance was because of this domestic violence and that's why. You acknowledge that's not true in other jurisdictions? I'm sorry? You acknowledge that may not be true in other jurisdictions?  Absolutely. That may be the rule. Correct. Even taking your testimony is credible. Go ahead. Thank you, Your Honor. But more importantly here is the word anticipated. There's no authority in the appellant's brief regarding anticipated. I believe that the United States brief has the only case law relevant to that. And it is a couple of cases out of the Fifth Circuit. Ochoa is one of them. But Ochoa also acknowledges a previous Fifth Circuit case called Omeda. Okay? So the Ochoa court, the Fifth Circuit decided anticipated includes pending State court cases. So Omeda, or I'm sorry, Ochoa would be authority on point, but it's not authority from this court. But the Ochoa court also cited, or there's a case cited in the United States brief called McCowan. McCowan said anticipated State court sentences are not those where the sentence to be imposed in the future is wholly speculative. This case, the case before this court, of course, is one of those rare circumstances, or it's one of those circumstances where the defendant did ultimately face a State court sentence. But at the time, it was not necessarily anticipated. More importantly, this court has not come down and said anticipated means any pending State court case. So the error, if any occurred, was not so plain and obvious. If it was that plain and obvious, again, it would be cited and also it would have been obvious to everyone at the sentencing hearing. But it wasn't so clear and obvious under controlling authority from the Supreme Court or from this court. Because the term anticipated remained at that time at least undefined, the district court here was not, did not make any mistake. It wasn't wrong in not anticipating a State sentence that would follow from this crime. One last point on that as well. I believe there is a harmless error analysis that does follow. And I cited a case in the brief called Rollins, 552F3739. That case says because 5G1.3c directs the district court to apply the 3553A factors when determining whether to apply a concurrent or consecutive sentence, any error in applying section 5G1.3 is harmless. And again, that case name is? Rollins, R-O-L-L-I-N-S, 552F3739. And that is at page 743, note 4. So regardless of what happened here, I believe there is a harmless error analysis that also applies. In the end, the United States believes that the evidence was properly admitted. It was the best evidence. It was the most applicable evidence showing the defendant committing his crime while he was committing it. The defendant was rightfully convicted. The conviction is appropriate. There was plenty sufficient evidence to support the conviction. And there was no clear error made in applying the guidelines or not applying section 5G1.3c at the sentencing hearing. The United States asks that the court affirm the conviction in all respects. All right. Thank you for your argument. Thank you. We'll hear a rebuttal. Ms. Steenholz? Thank you. The government points out that Candace's testimony was four pages, less than four pages. This is very limited. And I think that's important. The point of that is that all it does is tries to put the gun in Mr. Lebeau's hand. That's what this case is about. Now, the government argues because of the circumstances of how this happened that, in essence, Mr. Lebeau deserves for the jury to hear the whole four-minute and 55-second call that is egregious. And I just think that that misunderstands Rule 403 and what it's designed to protect against. It is a balancing test. Only 15 seconds. And if you do add up the statements, go back and listen to the call, add them up, it is less than 15 seconds. That is the only probative part of this. And Rule 403 says that's not enough to listen to an additional four minutes and 40 seconds of inflammatory information. The cautionary instruction doesn't help. It reinforces the error. And the government cannot meet its burden to overcome harmless error here. For these reasons, we ask the Court to vacate Mr. Lebeau's conviction and remand for trial or remand for nuisance. Thank you. Very well. Thank you for your argument.